IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GLEN BOOTAY,                                )
    Plaintiff,                            )
                                          )
        v.                            )   2:09-cv-1241
                                          )
KBR, INC.; KELLOGG, BROWN &                 )
ROOT SERVICES, INC.; KBR                    )
TECHNICAL SERVICES, INC.;                   )
OVERSEAS ADMINISTRATION
SERVICES, LTD.; and SERVICES
EMPLOYEES INTERNATIONAL, INC.,
    Defendants.


**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court are the MOTION OF KBR, INC., OVERSEAS

ADMINISTRATION SERVICES, LTD., AND SERVICE EMPLOYEES INTERNATIONAL,

INC. TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Document No. 13) and the

MOTION OF KELLOGG BROWN & ROOT SERVICES, INC. AND KBR TECHNICAL

SERVICES, INC. TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

(Document No. 15).  Plaintiff has filed responses in opposition to the motions and they have been

thoroughly briefed by all parties (Document Nos. 14, 16, 21-26, 29, 30).  In addition, both parties

have submitted exhibits for consideration by the Court.


Factual Background

       This case arises out of the serious health conditions suffered by Plaintiff allegedly due to

his exposure to sodium dichromate at the Qarmat Ali water treatment facility in Iraq in April

2003.  The Complaint alleges that poisonous materials were spread by members of the Baath

party in an effort to sabotage the facility.  At the time, Plaintiff was an Army sergeant on active

military duty during the Iraq war and was assigned to provide force protection at Qarmat Ali.

Bootay enlisted in the Army on September 12, 2001, received an honorable discharge, and has

experienced severe health symptoms that have resulted in his alleged disability at the age of

thirty.  Bootay has rendered patriotic service to the nation and is a sympathetic Plaintiff.

The five Defendants are related corporate entities.   KBR, Inc., the parent corporation,

had received a contract from the United States Army under the Logistics Civil Augmentation

Program ("LOGCAP") to provide logistical support services to the military forces operating in

Iraq.  One of the projects assigned to KBR, Inc. was to resume the pumping of water from the

Qarmat Ali facility into Iraqi oil fields to help Restore the Iraqi Oil industry (referred to as the

"RIO Contract") as quickly as possible after the invasion.  The remaining Defendants are alleged

to be subcontractors and/or affiliates on the project.


Motion to Dismiss for Lack of Personal Jurisdiction

Three of the five named Defendants,  KBR, Inc. ("KBR"),  Overseas Administration

Services, Ltd. ("Overseas"), and Service Employees International, Inc. ("SEII") (collectively the

"Jurisdictional Movants"), challenge the existence of personal jurisdiction in this Court.  Each of

these entities has submitted an affidavit which asserts that it is not registered to do business in

Pennsylvania, that it maintains no office, facilities, mailing address or employees in

Pennsylvania, and that it does not conduct, direct or solicit any business in Pennsylvania.

A district court may assert personal jurisdiction over a non-resident to the extent

authorized by the law of the state in which it sits. *See Time Share Vacation Club v. Atlantic*

*Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b).  Constitutional due process requires that a defendant have at least "minimum contacts" with a forum state and that the exercise of jurisdiction be consistent with traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Plaintiff agrees that the conduct at issue in this case occurred in Iraq and did not arise out of and was not related to Defendants' activities in Pennsylvania.  The United States military assigned Bootay, a Pennsylvania resident, to provide force protection at the Qarmat Ali facility, and therefore, it was pure happenstance that the alleged activities of Defendants had any connection to Pennsylvania.  Accordingly, the Court need not analyze the parameters of "specific jurisdiction" but need only determine whether it is appropriate to exercise "general jurisdiction" over the Jurisdictional Movants.  The well-established test for the exercise of "general jurisdiction" is whether a defendant has "continuous and systematic contacts" within the forum. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2007); *see also Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984).

Plaintiff falls far short of alleging the type of "continuous and systematic contacts" that could possibly support the exercise of "general jurisdiction."  Indeed, Plaintiff has not even attempted to rebut the Jurisdictional Movants' assertions of a complete lack of contacts with Pennsylvania.  Plaintiff's primary argument is that all of the "KBR" Defendants availed themselves of the laws of Pennsylvania because two entities filed petitions for bankruptcy in this district.  However, the exhibits submitted by Plaintiff clearly reflect that those filings were not

made by the Jurisdictional Movants, but rather, by the other two Defendants in this case, Kellogg

Brown & Root Services, Inc. ("KBR Services") and KBR Technical Services, Inc. ("KBR

Technical").  KBR Services and KBR Technical are separate and distinct corporate entities,

neither of which has challenged this Court's exercise of personal jurisdiction.   Plaintiff's

surreply brief asserts, citing *Simone v. Bombardier-Rotax, GMBH*, 360 F. Supp.2d 665 (E.D. Pa.

2005), that it is "well-established" that "the Court may exercise personal jurisdiction over either a

parent or subsidiary corporation based on the other's connections to the forum."  This is an

inaccurate and misleading statement of *Simone* and of the applicable legal rule.  The separate

existence of corporate entities **is** generally respected for jurisdictional purposes, and the activities

of one entity are imputed to another only if Plaintiff establishes that they should be regarded as

alter egos.  *See Eldon v. Brown,* 2010 WL 415317 (D.N.J. 2010) (citations omitted).  Plaintiff has

failed to show any indication of the control and/or coordination required to succeed under an

alter ego theory, but merely points to the manner in which various KBR-related entities filed

registration forms with the Pennsylvania Department of State and the "confusion" of one

employee having had his paycheck come from Overseas rather than KBR.   Finally, the only

other contact cited by Plaintiff is that numerous Pennsylvania residents have been employed

(outside of Pennsylvania) by Overseas and SEII.  The recruiting of employees from within a state

is clearly an insufficient basis for "general jurisdiction."  *Gehling v. St. George's School of*

*Medicine, Ltd.*, 773 F.2d 539 (3d Cir. 1985); *Corrales Martin v. Clemson University*, 2007 WL

4531028 (E.D. Pa. 2007).  It is clear that none of the Jurisdictional Movants have had continuous

and systematic contacts with Pennsylvania.

   Plaintiff has not requested the opportunity to conduct jurisdictional discovery.  In any

event, his allegations as to jurisdiction are so lacking that such a request would likely not be warranted. *See Poe v. Babcock Intl., PLC*, 662 F. Supp. 4, 7 (M.D. Pa. 1985) (Plaintiff's failed to produce any evidence to show alter ego theory and was not permitted to conduct discovery).

For the reasons stated, the MOTION OF KBR, INC., OVERSEAS ADMINISTRATION SERVICES, LTD., AND SERVICE EMPLOYEES INTERNATIONAL, INC. TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Document No. 13) will be **GRANTED**.


Motion to Dismiss for Failure to State a Claim

Defendants have raised numerous legal challenges to the Complaint. The Court will first address Defendants' contention that Plaintiff's claims are barred by the applicable statute of limitations, insofar as such would initially be dispositive of all claims.

All parties assume that Pennsylvania law applies, as will the Court. Tort claims under Pennsylvania law are subject to a two-year statute of limitations. 42 Pa.C.S.A. § 5524. Plaintiff recognizes in the Complaint that the statute of limitations would ordinarily have expired because the alleged exposure to sodium dichromate occurred in April 2003 and this lawsuit was not filed until September 2009. However, Plaintiff contends that the limitations period should be tolled, based on the following:[1] (a) Bootay was exposed to an orange powder throughout the facility but had no idea what it was, ¶¶ 17, 18; (b) Bootay suffered nose bleeds and skin lesions while at the Qarmat Ali facility, ¶ 127; (c) KBR managers were aware of the contamination of the Qarmat Ali

_____

[1]The Complaint is less than a model of clarity in this regard and the relevant averments are scattered throughout the pleading.

facility as soon as they arrived on-site,[2] but misrepresented the danger to the U.S. Army by denying any knowledge of contamination until at least July 2003, ¶¶ 39, 131; (d) the orange powder contained sodium dichromate and/or hexavalent chromium, which by its nature, is quickly uptaken at the cellular level, damages the cell, and then is quickly disposed of by the human body such that tests cannot confirm its presence unless they are conducted within weeks of the exposure, ¶¶ 39-41; (e) after his discharge from military service, Bootay vomited up to twenty times per day, suffered headaches and his health significantly deriorated, ¶ 21; (f) Bootay sought treatment at a VA facility in Georgia and was not diagnosed as having been exposed to sodium dichromate, ¶ 22; (g) Bootay's doctors "did not have a specific answer to the problem or a cause," ¶ 23; (h) the Senate hearing regarding Qarmat Ali chemical exposure occurred in June 2008, ¶ 41; and (i) Bootay did not become aware of the link between his ailments and his exposure to sodium dichromate until July 2009, when a friend told him about a newspaper article, ¶ 29.  The Complaint also conclusorily asserts that the newspaper article "disclosed the concealment of the Defendants' actions and misconduct.  Said concealment tolled the statute of limitations on these claims."  ¶ 8.

Plaintiff has not responded to Defendant's extensive discussion of the applicable legal precedent, but does cite to *Beauty Time, Inc. v. VU Skin Systems, Inc.*, 118 F.3d 140, 146-47 (3d Cir. 1997), for the proposition that when the underlying events upon which suit has been brought are based on fraud or deceit, that, without more, will toll the limitations period until the fraud has been revealed or should have been revealed by the exercise of due diligence by Plaintiff.

---

[2]Plaintiff's Memorandum of Law at 16-17 asserts that "KBR knew as early as May of 2003."

Alternatively, the limitations period may be tolled due to "independent acts of 'fraudulent concealment' of the events or circumstances constituting the underlying cause of action, irrespective of whether those underlying events are inherently fraudulent or not." *Id. Beauty Time* involved a trademark dispute and is not factually analogous to this case, but did summarize the general principles of tolling as follows, *id.* at 144:

> Pennsylvania law recognizes an exception to the statute of limitations which "delays the running of the statute until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the injury and its cause." *Urland v. Merrell-Dow Pharmaceuticals*, 822 F.2d 1268, 1271 (3d Cir.1987). Courts employ the "same 'knew or should have known' standard whether the statute is tolled because of the discovery rule or because of fraudulent concealment." *Id.* at 1273. Generally, courts have followed the old chancery rule adopted by the United States Supreme Court that when a party "has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar to the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' " *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585 (1946) (*quoting Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636).

> Regardless of the grounds for seeking to toll the statute, the plaintiff is expected to exercise reasonable diligence in attempting to ascertain the cause of any injury. *Urland,* 822 F.2d at 1273-74. Reasonable diligence has been defined as follows: "A fair, proper and due degree of care and acting, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity." Black's Law Dictionary 457 (6th ed.1991). As the court observed in *Urland*, there are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and suggest investigation. *Urland*, 822 F.2d at 1273.

Although Plaintiff has accurately portrayed the general discussion in *Beauty Time*, the Court of Appeals for the Third Circuit has further refined these tolling principles in several cases that are more factually similar to this one.  Of particular relevance, under Pennsylvania law a plaintiff has a rigorous duty to diligently investigate the cause of his injuries and a claimed lack

of knowledge is not sufficient to toll the limitations period.  Further, the "fraudulent

concealment" theory is narrowly tailored to toll the limitations period only when the defendant's

conduct causes the plaintiff to relax his vigilance or deviate from his right of inquiry.  In

*Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985), the Court of

Appeals explained (citations omitted):

> Under the law of Pennsylvania, it is the duty of the one asserting a cause of action
> to use all reasonable diligence to inform himself or herself properly of the facts
> and circumstances upon which the right of recovery is based and to institute suit
> within the prescribed statutory period. Mere mistake, misunderstanding or lack of
> knowledge on the part of the plaintiff is not sufficient to toll the running of the
> statute of limitations. However, if through fraud or concealment the defendant
> causes the plaintiff to relax vigilance or deviate from the right of inquiry, the
> defendant is estopped from invoking the bar of limitation of action.  In applying
> the doctrine of estoppel, Pennsylvania courts have not required fraud "in the
> strictest sense encompassing an intent to deceive, but rather fraud in the broadest
> sense which includes an unintentional deception." Nevertheless the defendant
> must "have done something amounting to an affirmative inducement to plaintiff to
> delay bringing the action."

*Ciccarelli* involved an alleged industry-wide conspiracy to conceal the hazards of asbestos

exposure for several decades.  The Court held that the plaintiff's claims were untimely because

the record did not reveal conduct by the defendants "that would cause the plaintiffs to deviate

from their right of inquiry" concerning the cause of their health condition.

In *Urland v. Merrell-Dow Pharmaceuticals*, 822 F.2d 1268, 1273-75 (3d Cir. 1987)

(involving alleged concealment that the drug Bendectin had caused birth defects of Plaintiff's

child), the Court of Appeals explained that there is no distinction between the "discovery rule"

and "fraudulent concealment" as to the amount of knowledge a plaintiff must possess for the

limitations period to begin to run (citations omitted):

> In Pennsylvania, the relevant inquiry for purposes of the statute of limitations is

8

whether plaintiffs knew or reasonably should have known of the causal
relationship between the injury and conduct causing that injury. However,
plaintiffs need not know that they have a cause of action or that the injury was
caused by another party's wrongful conduct. "[O]nce [a plaintiff] possesses the
salient facts concerning the occurrence of his injury and who or what caused it, he
has the ability to investigate and pursue his claim."

In *Debiec v. Cabot Corp.,* 352 F.3d 117, 132 (3d Cir. 2003) (involving exposure to

beryllium), the Court held that the statute of limitations begins to run when a plaintiff *suspects* he

has an injury caused by another, such as when a doctor tells him he might have been exposed to a

hazardous chemical – a definitive diagnosis is not necessary. The burden is on the plaintiff to

demonstrate that he exercised reasonable diligence. *Id.* at 129.

The Complaint is not drafted in a way to draw a clear distinction as to whether Plaintiff is

pursuing a "discovery rule" or "fraudulent concealment" theory. Plaintiff's theory of the case, as

clarified in the surreply brief, is that Defendants "failed to warn of medical consequences after a

known exposure" pursuant to Restatement (Second) of Torts § 324A. Thus, the "underlying

conduct" is based on alleged negligence, not fraud. There are no allegations (let alone allegations

which meet the "particularity" requirement in Fed. R. Civ. P. 9) that Defendants defrauded

Bootay into becoming initially exposed to sodium dichromate. To the contrary, the Complaint

alleges that an orange powder was readily visible. Rather, the alleged concealment occurred

later, when Defendants learned that the powder contained a hazardous chemical and allegedly

failed to timely disclose that information to the Army.

In any event, after applying the principles of Pennsylvania law to the facts as alleged in

the Complaint, Plaintiff has not alleged a sufficient basis to toll the statute of limitations under

any theory. Bootay possessed the salient facts concerning the occurrence of his injury in April

2003, as he avers in the Complaint that he observed the orange dust and suffered nose bleeds and skin lesions "while at the facility."  Bootay was also aware of KBR's role at the Qarmat Ali facility – indeed, the gravamen of the Complaint is that KBR owed a duty to the soldiers who served on the site.  Bootay's allegation that his doctors did not have a specific answer as to the cause of his ailments is similarly insufficient.  *Compare Debiec,* 352 F.3d at 132 (receipt of a medical opinion that chemical exposure was probably not the source of ailments might have tolled the limitations period).  Because Bootay knew that he suffered nose bleeds and skin lesions at the Qarmat Ali facility, he was required to diligently investigate the source and cause of those ailments.  *See Mest v. Cabot Corp.*, 449 F.3d 502, 508-09 (3d Cir. 2006) (recounting the extensive efforts by farmers to investigate cause of ailments suffered by cows exposed to fluoride contamination from neighboring factory).

The fraudulent concealment alleged in this case is analogous to that which was held to be insufficient in *Ciccarelli* and *Urland* – namely, the KBR Defendants allegedly withheld information about the potential adverse effects of exposure to sodium dichromate, just as the defendants in those cases allegedly withheld information about the adverse effects of exposure to asbestos and Bendectin, respectively.  The Complaint does not allege any affirmative inducement by the KBR Defendants to Bootay to delay his filing of this lawsuit – to the contrary, his theory is that Defendants failed to communicate with him at all.  *See, e.g., Mest,* 449 F.3d at 517 (fraudulent concealment doctrine does not apply because no communications by Defendant were alleged).[3]  In sum, the Complaint does not sufficiently allege that the KBR Defendants caused

---

[3]The *Mest* Court further explained that Defendant had no duty to disclose information because no fiduciary relationship existed between the parties.  The same reasoning applies here.

Bootay to relax his diligence or to deviate from his right of inquiry into the cause of his medical problems.  Under Pennsylvania law, a defendant does not have an affirmative "duty to warn" in order for the limitations period to run.  In the words of the *Ciccarelli* Court: "Whatever the morality of defendants' actions with regard to [sodium dichromate], the defendants are not estopped from asserting a statute of limitations defense because they did not call to plaintiffs' attention those facts which might have aided their investigation."  757 F.2d at 557.

In this case, Bootay apparently ceased his efforts to pursue the alleged exposure. Although the reasonableness of Plaintiff's actions is often a jury question, it may be resolved as a matter of law when no reasonable jury could reach a contrary decision.  *Harry Miller Corp. v. Mancuso Chem. Ltd.*, 469 F. Supp.2d 303, 315-16 (E.D. Pa. 2007) (concluding as a matter of law that discovery rule did not apply due to Plaintiff's "dilatory and disinterested approach to protecting its rights").  Taking the allegations in the Complaint as true, it was clearly not "reasonably diligent" for Bootay to do nothing by way of investigation for six years.  Indeed, over a year passed after the June 2008 Senate hearing before Bootay became aware of the issue – and then, he only became aware by having been alerted by a friend.  Bootay knew that he had suffered an injury at the Qarmat Ali facility, and although he was uncertain as to the exact causal mechanism, it was incumbent upon him to investigate more diligently to toll the applicable statute of limitations.

In accordance with the foregoing, the MOTION OF KELLOGG BROWN & ROOT SERVICES, INC. AND KBR TECHNICAL SERVICES, INC. TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (Document No. 15) will be **GRANTED**.

Leave to Amend Complaint

If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative

amendment unless such an amendment would be inequitable or futile.  *Alston v. Parker*, 363 F.3d

229, 235 (3d Cir. 2004); *Accord Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002).

A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek

leave to amend.  *Id.* The district court may dismiss the action if the plaintiff does not file an

amended complaint within that time, or if the plaintiff files a notice of his intent to stand on the

complaint as filed.

Although the Complaint in this case is being dismissed on statute of limitations and

personal jurisdiction grounds, Defendants have raised additional legal challenges, some of which

appear to have merit.[4]  If Bootay chooses to file an amended complaint, it will be important to

address these alleged shortcomings as well, to assure that the amended complaint contains

sufficient factual allegations to render the claim(s) "plausible" in compliance with the pleading

standard set forth in *Twombly* and *Phillips*.

An appropriate Order follows.

McVerry, J.

_____

[4]Defendants argue that: (1) the negligence claim must fail because Defendants owed no
duty to warn an individual soldier; (2) there is no independent claim for "gross negligence" under
Pennsylvania law; (3) the fraud claim must fail because the Complaint does not allege that
Defendants made any representations to Bootay whatsoever, and the allegations of fraud are not
pled with particularity; and (4) the intentional infliction of emotional distress claim fails to allege
intentional or reckless conduct or extreme and outrageous conduct.

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GLEN BOOTAY,** | ) |
|     **Plaintiff,** | ) |
| | ) |
|        **v.** | )   **2:09-cv-1241** |
| | ) |
| **KBR, INC.; KELLOGG, BROWN &** | ) |
| **ROOT SERVICES, INC.; KBR** | ) |
| **TECHNICAL SERVICES, INC.;** | ) |
| **OVERSEAS ADMINISTRATION** | |
| **SERVICES, LTD.; and SERVICES** | |
| **EMPLOYEES INTERNATIONAL, INC.,** | |
|     **Defendants.** | |

## ORDER OF COURT

AND NOW, this 26th day of March, 2010, in accordance with the foregoing

Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that the MOTION

OF KBR, INC., OVERSEAS ADMINISTRATION SERVICES, LTD., AND SERVICE

EMPLOYEES INTERNATIONAL, INC. TO DISMISS FOR LACK OF PERSONAL

JURISDICTION (Document No. 13) is **GRANTED**; and the MOTION OF KELLOGG BROWN

& ROOT SERVICES, INC. AND KBR TECHNICAL SERVICES, INC. TO DISMISS UNDER

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (Document No. 15) is **GRANTED** on the

basis of the statute of limitations.

Plaintiff may file an amended complaint, or notice of intent to stand on the current

complaint, on or before April 9, 2010.


BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge

13

cc:     Fred C. Jug , Jr., Esquire
         Email: fredjug@covad.net

         Joseph L. Luciana , III, Esquire

         Email: jluciana@dfllegal.com

         John R. Dingess, Esquire

         Email: jdingess@dfllegal.com

         William Wickard, Esquire

         Email: william.wickard@klgates.com